A11A1332. STALLING et al. v. STATE OF GEORGIA et al.

(717 SE2d 733)

ANDREWS, Judge.

Janet Stalling, Anna McClannahan, Polly Barron, Gwen Cheatham, and Janet Keller (collectively "teachers") appeal from the trial court's order dismissing their complaint against the State of Georgia, Cathy Cox, Superintendent of Schools, and the Georgia Department of Education (collectively "the State") seeking a declaratory judgment, injunctive relief, and asserting a claim for detrimental reliance. The teachers filed the complaint after the General Assembly did not fund a ten percent pay increase to which the teachers claimed they were entitled.

The State filed a motion to dismiss, raising numerous grounds. The trial court granted the motion on the grounds that the named defendants were not the proper parties to the case. For the following reasons, we affirm.

OCGA § 20-2-212.2 (b), (c) provides in pertinent part:

> (b) For initial national certification prior to July 1, 2006, and subsequent renewals anytime thereafter, (1) Any person who: (A) Is currently teaching full time in a Georgia public school and holds a valid Georgia teaching certificate; and (B) Has successfully completed the prerequisite portfolio of student work and examination and has received national certification shall receive not less than a 10 percent rate increase in state salary for each year he or she holds national certification. Such increase shall be awarded beginning on the date such certification is received. The 10 percent increase shall be computed based on the state salary for such individual when national certification is received and recomputed each subsequent year based on the individual's state salary for that school year. In the case of a person who has received such national certification prior to July 1, 2000, and is receiving or is eligible to receive a 5 percent rate increase, the 5 percent rate increase shall be changed to a 10 percent rate increase effective with the commencement of the 2000-2001 school year. The increase in state salary provided by this Code section shall be in addition to any other increase for which the person is

eligible. An individual receiving a salary increase pursuant to this subsection shall cease to receive such increase if he or she leaves a teaching position after March 1, 2009. This subsection shall be subject to appropriations by the General Assembly. . . .

(c) Except as provided for in subsections (b.1) and (c.1) of this Code section, for initial national certification between July 1, 2006, and March 1, 2009, and subsequent renewals anytime thereafter, (1) Any person who: (A) Is currently teaching full time in a high-needs school and holds a valid Georgia teaching certificate as defined by the Professional Standards Commission; and (B) Has successfully completed the prerequisite portfolio of student work and examination and has received national certification shall receive not less than a 10 percent rate increase in state salary for each year he or she holds national certification. Such increase shall be awarded beginning on the date such certification is received. The 10 percent increase shall be computed based on the state salary for such individual when national certification is received. A teacher who transfers to a high-needs school after such individual receives national certification shall receive such increase beginning on the effective date of transfer if the teacher meets the requirements of this subsection, and such increase shall be computed based on the state salary for such individual on the effective date of the transfer. Provided such individual remains employed in a high-needs school or in a school that was designated as a high-needs school at the time the individual received national certification or transferred to such school and otherwise continues to meet the requirements of this subsection, the 10 percent increase shall be recomputed each subsequent year based on such individual's state salary for that school year. An individual receiving a salary increase pursuant to this subsection shall cease to receive such increase if he or she leaves a teaching position after March 1, 2009. This subsection shall be subject to appropriations by the General Assembly. . . .

The last sentence of both subsections stating that the raises "shall be subject to appropriations by the General Assembly" was added to the Code section in 2009. In the school year 2009-2010, the State failed to fully fund the ten percent salary increase mandated by the above

Code section.

The teachers sued, requesting: a declaratory judgment that the 2009 amendment to the statute is unconstitutional in that it impairs a vested right in the ten percent salary increase by making it subject to appropriations by the General Assembly; an injunction preventing the State from withholding the ten percent pay raise; and damages for "detrimental reliance" on a promise.

The trial court granted the State's motion to dismiss, which pointed out that the claims were not proper remedies against the named defendants because the contracts between the teachers and their employers, the local school boards, would determine whether the employer was required to pay the ten percent salary increase.

The teachers argue that they are not suing their local school boards for breach of contract, but rather are suing the State of Georgia for unconstitutionally interfering with a vested right by adding the language "subject to appropriations by the General Assembly" to the statute already in effect. But, even without this added language, subsequent General Assemblies are not required to fund these raises. *Buskirk v. State of Ga.*, 267 Ga. 769 (482 SE2d 286) (1997).

> For nearly 25 years, the state gave within-grade pay increases to employees in the classified service of the State Merit System who rated "satisfactory" or better in their job performance appraisal. Then, on April 25, 1991, responding to a budget crisis in fiscal year 1991, the governor called for an immediate freeze on such pay hikes. The General Assembly appropriated money for within-grade wage increases in fiscal year 1992. However, it met in August 1991 and removed that money from the budget. Thereafter, the legislature refused to fund within-grade pay increases in fiscal years 1993, 1994 and 1995.

Id. As a result, employees in the classified service sued, claiming that the State violated the State Merit System Act, OCGA § 45-20-1 et seq., by illegally withholding within-grade pay increases. Id. The employees brought claims of breach of contract, impairment of contractual rights, and violations of constitutional rights. The trial court granted summary judgment to defendants on the grounds that "any obligation on the part of the state to pay wage increases in the future would constitute an illegal pledge of credit." Id. at 770.

The Court stated:

> [U]nless the General Assembly authorized the expenditure of salary increases for a given fiscal year, see *Busbee v. Ga.*

*Conference, American Assn. of Univ. Professors,* 235 Ga. 752, 760 (2) (221 SE2d 437) (1975), the state was not required to give them. Why? Because the General Assembly cannot pledge the good faith and credit of the state into the future. *State Ports Auth. v. Arnall,* 201 Ga. 713, 728 (41 SE2d 246) (1947). See also Ga. Const. of 1983, Art. III, Sec. IX, Par. I ("No money shall be drawn from the treasury except by appropriation made by law."). As this Court has said: "No one legislature [can] tie the hands of its successors with reference to a subject upon which they have an equal power to legislate.

Id. at 770.

It follows then, as the trial court held, the teachers' claims are against their local school boards because the contracts are between the teachers and the local boards. In *Busbee v. Ga. Conference, American Assn. of Univ. Professors,* 235 Ga. 752 (221 SE2d 437) (1975), overruled on other grounds, *Self v. City of Atlanta,* 259 Ga. 78, 80 (377 SE2d 674) (1989), university professors brought similar claims after their salary increase provision was removed from the budget by the General Assembly. Id. at 753. The Court held that the teachers' only claim was against the Board of Regents because they entered into their employment contracts with that Board. Id. at 759.

In short, Regents' faculty contracts are valid and binding and Regents may have the necessary money to meet its obligations. If it does not have the money, it may be able to find it, or raise it, or obtain it. Until these possibilities have been exhausted, the amended appropriations Act is not subject to constitutional attack on grounds of impairment.

Id. at 764.

Thus, the trial court correctly held that any claim the teachers might have of entitlement to the salary increase must be brought under their contracts with their employers, the local school boards. Accordingly, the trial court did not err in granting the State's motion to dismiss the complaint.

*Judgment affirmed. Phipps, P. J., and McFadden, J., concur.*

DECIDED OCTOBER 19, 2011.

*Adams, Hemingway & Wilson, F. Bradford Wilson, Jr., John P. Fox,* for appellants.

*Samuel S. Olens, Attorney General, DeBraé C. Kennedy, Assistant Attorney General*, for appellees.